UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIMITRIOS N. GRIGORIOU,                                    DECISION AND ORDER

                              Plaintiff,                   13-CV-6008 CJS

            -v-

FIRST RESOLUTION INVESTMENT
CORPORATION, FIRST RESOLUTION
MANAGEMENT CORPORATION,
DUBIN & DUBIN, LLP, ROBERT J. DUBIN
and JOHN DOE,
                              Defendants.

APPEARANCES

For Plaintiff:                          Dimitrios N. Grigoriou, *pro se*
                                        220 John Street, Apartment 7302-3
                                        Rochester, New York 14623

For Defendants First Resolution
Investment Corporation and First
Resolution Management Corp. :           Christopher W. McMaster, Esq.
                                        525 Brisbane Building
                                        403 Main Street
                                        Buffalo, New York 14203

For Defendants Dubin & Dubin,
LLP and Robert J. Dubin:                Christopher Bopst, Esq.
                                        Goldberg Segalla LLP
                                        665 Main Street, Suite 400
                                        Buffalo, New York 14203

INTRODUCTION

        Plaintiff maintains that Defendants attempted to collect a debt from him that he did

not owe, and in the process, damaged his credit history.   Proceeding *pro se*, Plaintiff is

attempting to assert claims pursuant to Federal Trade Commission Act ("FTC Act"), the Fair

Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA").   Now

before the Court are Defendants' motions for judgment on the pleadings. (Docket Nos. [#23][#25]).  The applications are granted and this action is dismissed.

BACKGROUND

The factual allegations in the Complaint [#1], which the Court presumes to be true for purposes of this Decision and Order, indicate the following:  1) First Resolution Investment Corporation and First Resolution Management Corporation ("the First Resolution Defendants") buy "junk debt," attempt to collect such debt, and employ Dubin & Dubin, LLP, and Robert J. Dubin, Esq. ("the Dubin Defendants") to provide legal representation in connection with their debt-collection efforts; 2) on February 10, 2009, the Dubin Defendants, on behalf of First Resolution Investment Corp., sued Plaintiff, in Rochester City Court, to collect an alleged debt in the amount of $8,320.51, which they maintained Plaintiff originally incurred to Chase Bank; 3) on February 30, 2009, Plaintiff informed Mr. Dubin, in writing and by telephone, that he disputed the debt, inasmuch as he never had a credit card with Chase Bank, and he "demanded validation of the alleged debt" pursuant to "15 U.S.C. § 1692(f)"; 4) Mr. Dubin told Plaintiff that he did not have information about the debt, and after talking with Plaintiff about Plaintiff's finances, told Plaintiff that "he would not be pursuing" the debt; 5) Plaintiff apparently heard nothing further about the alleged debt until September, 2010, when he applied for a student loan through the New York State Higher Education Services Corporation ("HESC") at an interest rate of 8.25 %, and  was denied because of "negative information" on his credit report; 6) thereafter Plaintiff examined his credit reports, furnished by several different credit reporting agencies, and found "a debt listed from First Resolution Investment;" 7) Plaintiff informed the credit reporting agencies that he disputed the debt, but the debt remained on his credit report; 8) subsequently, in October, 2010, Plaintiff obtained

2

a student loan from a private lender at a higher interest rate (9.75%);  9) on January 17, 2012, Defendants filed a motion for summary judgment in the City Court action, without ever having provided Plaintiff with any additional information about the debt; 10) Plaintiff characterizes the City Court action as "false and misleading," because the debt collection action was time-barred, and because while the action was still pending, Mr. Dubin falsely told City Court that the parties had agreed to dismiss the action;[1] 11) in March, 2012, Plaintiff obtained copies of his credit report, which still listed the disputed debt to First Resolution Investment; and 12) in March, 2012, and during the two years prior to that, Plaintiff received unsolicited, anonymous telephone calls, including a recorded message which he believes contains the voice of Robert Dubin, offering to help him refinance the alleged debt.

With regard to the City Court action, the Complaint indicates that Plaintiff asserted unspecified "counterclaims" against First Resolution Investment.[2]  The Complaint further indicates that  on April 11, 2012, Plaintiff and First Resolution Investment "were able to conclude the [City Court] lawsuit."[3]  At oral argument, Counsel for First Resolution Investment explained that his client had voluntarily discontinued the City Court action against Plaintiff.  As for Plaintiff, the Complaint indicates that he voluntarily withdrew his counterclaims against First Resolution Investment in the City Court action, because he

---

[1]The parties did later settle the City Court action.

[2]Complaint [#1] at ¶ 25.

[3]Complaint [#1] at ¶ 29.

intended to file the subject action in federal court, adding additional defendants and "additional claims."[4]

On January 4, 2013, Plaintiff commenced this action.  The Complaint purports to assert six separate causes of action, based on the facts alleged above.  Specifically, Plaintiff alleges that Defendants violation the following provisions of federal law: the FTC Act, § 5(a), 15 U.S.C. § 45(a); the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A) & (b); and the FDCPA, 15 U.S.C. § 1692e & 15 U.S.C. § 1692g(b).  The Complaint demands injunctive, equitable and monetary relief.

All Defendants except "John Doe" were served and answered the Complaint.[5]  On October 4, 2013, the First Resolution Defendants filed a motion [#23] for judgment on the pleadings.  On December 20, 2013, the Dubin Defendants filed their own motion [#25] for judgment on the pleadings, adopting the First Resolution Defendants' arguments.

Plaintiff filed a one-page response [#26] to the First Resolution Defendants' motion, in which he asserts that his Complaint "states claims for declaratory and injunctive relief under the FDCPA and FCRA."  His response, though, does not mention the FTC Act.  Plaintiff further states that he opposes Defendants' motion because no discovery has been conducted.

On January 17, 2013, the First Resolution Defendants filed a reply [#27].  On March 13, 2014, the parties appeared before the undersigned for oral argument.

---

[4]Complaint [#1] at ¶ 28.

[5]John Doe represents the person who telephoned Plaintiff about refinancing the debt.  Plaintiff indicates that he will discover the identity of John Doe in discovery, though he thinks that John Doe is Mr. Dubin.

DISCUSSION

Defendants have moved for judgment on the pleadings, and "[t]he same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010) (citation omitted).  Such standard is clear:

> Federal Rule of Civil Procedure 8a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007 ) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657 (2000).

"A party may raise an affirmative defense, such as a statute of limitations defense, in a Rule 12(b)(6) or Rule 12(c) motion if the facts supporting the defense, such as the relevant dates, appear on the face of the challenged pleading." *The Estate of Mantle v.*

5

*Rothgeb*, No. 04 Civ. 4310(KMW)(HBP), 2007 WL 4548127 at *4 (S.D.N.Y. Nov. 6, 2007) (*citing United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir.2005)).

"While a *pro se* complaint must contain sufficient factual allegations to meet the plausibility standard, this Court affords *pro se* litigants 'special solicitude' by 'interpreting [a *pro se*] complaint to raise the strongest claims that it suggests.'" *Jackson v. Pfau*, No. 12–324–pr, 523 Fed.Appx. 736, 737, 2013 WL 1338712 at *1 (2d Cir. Apr. 4, 2013) (table) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir.2011) (alterations and quotation marks omitted)).

### First Resolution Management Corp.

First Resolution Management Corp. maintains that all claims against it should be dismissed, since the Complaint lacks any allegations that it engaged in wrongdoing in connection with any of the causes of action.[6]  The Court agrees.  Paragraph six of the Complaint alleges that First Resolution Management Corp. is Canadian company that buys "junk debt," but otherwise the Complaint is devoid of factual allegations about the company. Accordingly, the Complaint fails to state any claim against First Resolution Management Corp.

### The FTC Act Claims

The Complaint includes several allegations that the remaining Defendants[7] violated the FTC Act.  In fact, while the Complaint also references the FCRA and FDCPA, all of

---

[6]*See*, First Resolution Defendants' Memo of Law at p. 12.

[7]Hereinafter simply "Defendants," unless otherwise indicated.

6

Plaintiff's causes of action are expressed as violations of the FTC Act.[8]  However, the Court agrees with Defendants that the FTC Act does not provide Plaintiff with the right to bring a private action to enforce its terms. *See, F.T.C. v. Bronson Partners, LLC*, 564 F.Supp.2d 119, 127 n. 5 (D. Conn. 2008) (Indicating that "the FTC must bring actions under the FTC Act."); *Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978) ("[I]t is clear that no private right of action arises under that Act," referring to the FTC Act, 15 U.S.C. § 45(a)(1).) (*citing, among other cases*, *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986 (D.C. Cir. 1973) (Discussing why there is no express or implied private right-of-action under the FTC Act)).  Accordingly, Defendants are entitled to judgment as a matter of law on all claims asserted pursuant to the FTC Act.

## *The FCRA Claims*

The third and fourth causes of action in the Complaint purport to assert claims under the FCRA, 15 U.S.C. § § 1681s-2(a) and 1681s-2(b).  15 U.S.C. § 1681s-2(a) "imposes a duty on furnishers of [credit] information to provide accurate information to consumer reporting agencies and an ongoing duty to correct inaccurate information." *Weich-Pulaski v. Wells Fargo Bank Minnesota, Nat.   Ass'n*, No. CV 09–1670(JS)(WDW), 2010 WL 5491113 at *3 (E.D.N.Y. Dec. 9, 2010) (internal quotation marks omitted).  However, it is clear that there is no private right-of-action under § 1681s-2(a). *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]he district court correctly concluded, as many other courts have held, that there is no private cause of action for violations of §

---

[8]*See*, Complaint [#1] at ¶ ¶ 36, 39, 43, 46, 49 and 52.

1681s–2(a).").  Accordingly, Defendants are entitled to judgment as a matter of law on the claims pursuant to § 1681s-2(a).

On the other hand, § 1681s-2(b) does allow a private right-of-action.  *See*, *Longman v. Wachovia Bank, N.A.*, 702 F.3d at 151-152.  In that regard, § 1681s-2(b) "imposes additional duties on furnishers of information who have been informed, pursuant to section 1681li(a)(2), that the information has been disputed," and "applies when the furnisher has been notified by a credit reporting agency of a dispute by the consumer." *Weich-Pulaski v. Wells Fargo Bank Minnesota, Nat. Ass'n*, 2010 WL 5491113 at *3 (citations omitted); *see also*, *Sweitzer v. American Express Centurion Bank*, 554 F.Supp.2d 788, 795 (S.D.Ohio 2008) ("[A] § 1681s–2(b)(1) violation is triggered only upon a consumer reporting agency providing notice to the furnisher of information.").  However, Defendants maintain that the Complaint fails to state a claim under that section, since it does not allege that they were ever notified by the credit reporting agencies that Plaintiff was disputing the information on his credit report.  The Court agrees that the Complaint lacks such an express allegation.[9] At most, the Complaint indicates that Plaintiff told the credit agencies that he disputed the debt, and that he never heard anything about it from Defendants.[10]

However, even assuming that the credit reporting agencies notified Defendants that Plaintiff was disputing the information on his credit report, Defendants maintain that a claim

---

[9]*Compare, with Sweitzer v. American Express Centurion Bank*, 554 F.Supp.2d at 792 ("Automated Consumer Dispute Verification (ACDV), Consumer Dispute Verification (CDV), and similar forms are triggered by raising a dispute with a credit bureau or credit reporting agency.  The credit bureau is the party that forwards the forms to the furnisher of credit.  This indicates to the furnisher that there is a person disputing an item reported to the credit bureau.  *Plaintiff's Amended Complaint alleges that Amex received notice from the credit reporting agencies in March 2002.* ") (emphasis added; internal citations omitted).

[10]*See*, Complaint [#1] at ¶ ¶ 15-16.

8

under § 1681s-2(b) is time-barred in any event, since Plaintiff was aware of both the inaccurate information on his credit report and Defendant's alleged failure to correct the same in response to his complaint, more than two years before he commenced this action. In that regard,

> the FCRA requires that any action to enforce any liability created under this subchapter  be brought not later than the earlier of 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or 5 years after the date on which the violation that is the basis for such liability occurs.

*Andresakis v. Capital One Bank (USA) N.A.*, No. 09 Civ. 08411(DAB)(FM) 2011 WL 846830 at *2-3  (S.D.N.Y. Feb.3, 2011) (citing 15 U.S.C. § 1681p, internal quotation marks omitted), *report and recommendation adopted by* 2011 WL 1097413 (S.D.N.Y. Mar. 23, 2011). "[G]enerally, liability for a 15 U.S.C. § 1681s–2(b) violation arises *30 days* after the furnisher of information does not comply with its obligations outlined in § 1681s2(b)(1)(A)-(D)." *Sweitzer v. American Express Centurion Bank*, 554 F.Supp.2d at 795 (emphasis added, citations omitted); *see also*, 15 U.S.C. § § 1681s-2(b)(2) & 1681i(a)(1).

In this action, as already mentioned, the Complaint does not expressly allege that the credit reporting agencies notified Defendants that Plaintiff was disputing the debt.  However, even assuming that such an allegation was added, the claim would still fail.  On this point, assuming that Defendants' liability under § 1681s-2(b) would arise thirty days after they were notified of the dispute by the credit reporting agencies, Plaintiff's claim under § 1681s-2(b) would have accrued in October or November 2010, at the latest.  In that regard, the Complaint, in pertinent part, blames Defendants for the fact that Plaintiff was required to take out a higher-interest student loan in October 2010, because Defendants failed to

correct his credit report.  Plaintiff was therefore aware in October 2010 that Defendants had not removed the debt from his credit report.

As previously mentioned, Plaintiff had two years to commence an action under § 1681s-2(b).  Therefore, since his claim accrued in October or November 2010, he was required to commence his action under § 1681s-2(b) by October or November 2012.  However, Plaintiff did not commence this action until January 4, 2013, which was more than two years after his claim accrued under § 1681s-2(b).  Accordingly, it is evident from the face of the Complaint that the § 1681s-2(b) claim is time-barred.

At oral argument, the *pro se* Plaintiff asked whether the pendency of the City Court action would have tolled the statute of limitations on his later-filed federal claims.  Plaintiff's question is reasonable, but the answer is no.  The Court cannot toll a statute of limitations unless there is a recognized legal or equitable basis for doing so.  Plaintiff has not identified any legal basis for such tolling, nor is the Court aware of any principle of legal tolling that would apply where, as here, a party voluntarily withdrew state court claims and later commenced a federal court action arising from the same facts, but involving additional parties and different claims. *See*, 19 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4519 (2d ed. updated 2013) ("State court action does not toll the statute of limitations for a 'later-filed and distinct federal action.'") (*citing  Morris v. Hoffa*, D.C.Pa. 2002, 2002 WL 524037, 169 L.R.R.M. (BNA) 3082).

Nor can the Court find that equitable tolling applies here.  In that regard, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mayo v. Federal Government*, No. 12–4192, — Fed.Appx. — , 2014 WL 928999

at *1 (2d Cir. Mar. 11, 2014) (*quoting A.Q.C. ex rel Castillo v. U.S.*, 656 F.3d 135, 144 (2d

Cir. 2011)).  Neither element exists here.  In that regard, Plaintiff waited more than eight

months after the discontinuance of the City Court action to bring this action,[11] during which

time there was nothing unusual preventing him from commencing the action sooner.

For the foregoing reasons, Plaintiff's claim under § 1681s-2(b) is time-barred, and

therefore must be dismissed.

_The FDCPA Claims_

The fifth and sixth causes of action in the Complaint allege violations of the FDCPA,

15 U.S.C. § § 1692e & 1692g.  Generally, 15 U.S.C. § 1692e prohibits debt collectors from

using "any false, deceptive, or misleading representation or means in connection with the

collection of any debt."  The fifth cause of action specifically alleges that Defendants violated

§ 1692e, sections (2)(A) (misrepresenting the character, amount, or legal status of a debt),

(8) (communicating credit information  known to be false) and (10) (using false

representations or deceptive means).  The sixth cause of action specifically alleges that

Defendants violated § 1692g(a) (requiring debt collector to provide notice regarding amount

and type of debt and debtor's rights) and § 1692g(b) (requiring debt collector to cease

collection efforts if debtor disputes debt).

With regard to the claim under § 1692e, the Complaint alleges that Defendants used

false, deceptive or misleading representations/means, in the following instances: 1) in

February, 2009, Defendants commenced the City Court action to collect a debt that Plaintiff

did not owe, and which was allegedly time-barred, and thereafter maintained that action until

---

[11]The City Court action was discontinued on April 11, 2012. Complaint [#1] at ¶ 29.  The instant action was commenced on January 4, 2013.

it was discontinued in April, 2012; 2) in February, 2009, Mr. Dubin indicated that he would not pursue the lawsuit, but he did so anyway;  and 3) some time prior to February 29, 2012,[12] Mr. Dubin falsely informed the City Court Judge that he and Plaintiff had agreed to discontinue the action.  With regard to the claim under § 1692(g), the Complaint alleges that Defendants violated the statute in the following respect:  In February 2009, they began their attempts to collect a debt from him, without providing him with the proper notices, and thereafter continued their efforts, via the lawsuit, even though Plaintiff disputed the debt.[13]

Defendants maintain that the FDCPA claims are time-barred.  In that regard, claims under the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C.A. § 1692k(d) (West 2014).  As the statute indicates, the one-year period runs from the date the defendant committed the violation, not the date of discovery.  *See, Thompson v. Ocwen Fin. Corp.*, Civil Action No. 3:13–CV–386 (JCH), 2013 WL 4522504 at *4 (D.Conn. Aug. 27, 2013) ("[T]he FDCPA [is an] "occurrence" statute[ ].  In other words, Thompson's FDCPA . . .  claims accrued on May 11, 2010, at the time of the alleged violations rather than at the time Thompson claims to have discovered them, in December 2012.") (citations omitted).

---

[12]The Complaint [#1], ¶ 26, does not indicate the exact date that Dubin allegedly made such misrepresentation to the Court, but indicates that it was prior to February 29, 2012.

[13]The Complaint further indicates that prior to March 2012, Plaintiff received many anonymous "robo dialing" telemarketing calls urging him to refinance the alleged debt.  *See*, Complaint [#1] ¶ ¶ 32-33.  Plaintiff has sued a "John Doe" entity as the caller, but indicates that he believes the caller may have been Mr. Dubin, since the voice on the telephone sounded similar to his.  However, the Complaint does not plausibly plead a claim against defendants on that point.  In that regard, from the facts alleged in the Complaint, it is not plausible that from a single telephone conversation with Dubin in February 2009, Plaintiff could recognize Dubin's voice many years later.  Nor does the Complaint otherwise plead facts from which it would be plausible to believe that Attorney Dubin actually makes such telemarketing calls urging people to refinance their debts.  *See*, Complaint [#1] ¶ 32 (Indicating that according to Plaintiff's internet research, he found "a consumer website with thousands of people posting about receiving calls from the same numbers.")

The Court agrees that the FDCPA claims are time-barred.  More specifically, the claims under § 1692g arose in 2009, after Plaintiff became aware of the lawsuit, asked for additional information, and disputed that he owed the debt.  Therefore, those claims are barred by the one-year statute of limitations.  Similarly, the claims relating to the City Court lawsuit arose in February, 2009, when Defendants commenced the action, and Plaintiff did not commence this action until more than a year later. *See, Calka v. Kucker, Kraus & Bruh, LLP*, No. 98 Civ. 0990(RWS), 1998 WL 437151 at *3 (S.D.N.Y. Aug. 3, 1998) (Calka was ... on notice of the misrepresentation and unconscionable debt collection means when the State Action was filed, and it was at that time that the violation accrued.").[14]

It appears that the only act which could have taken place within the one-year limitations period is Mr. Dubin's alleged action in falsely informing City Court that he and Plaintiff had agreed to discontinue the lawsuit, which apparently occurred in or about March, 2012.  Plaintiff contends that such action violated § 1692e(2)(A), (8) and 10.  However, the Court finds that such fact, if proven, would not violate those provisions, for several reasons. First, the misrepresentation allegedly made to City Court is vague hearsay,[15] which did not pertain directly to the debt or give Defendants any unfair advantage regarding the debt, and had no material affect on Plaintiff's rights under the FDCPA. *See, Okyere v. Palisades*

---

[14]At oral argument, the *pro se* Plaintiff asked whether Defendants' continued attempts to collect the same debt from him constituted "new" violations, so as to  extend the statute of limitations.  The answer is no. For example, to the extent that Plaintiff maintains that certain discrete actions by Defendants in connection with their prosecution of the City Court action constituted distinct violations of the FDCPA, the law in this Circuit is to the contrary. *See, Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151 at *3 (Rejecting the argument that the maintenance of a state-court debt-collection lawsuit amounted to a FDCPA continuing violation).

[15]Plaintiff's allegation on this point is in the nature of fraud.  Specifically, he maintains that Dubin sent a fraudulent letter to City Court, indicating that the parties had agreed to discontinue the action.  However, Plaintiff does not claim that he actually saw such a letter.  Instead, he states that the City Court Judge told him about such a letter.  Thus, the exact contents of the letter are not pleaded.  Accordingly, the alleged fraudulent statement is not set forth in the Complaint with particularity.

*Collection, LLC*, — F.Supp.2d — , 2013 WL 1173992 at *8 (S.D.N.Y. Mar. 22, 2013) ("Perhaps Okyere would argue that there was some kind of 'false' representation as to the attorneys of record in this case. 15 U.S.C. § 1692e. But the surrounding circumstances alleged in the complaint make clear that this representation had no impact on the actual harm that was allegedly caused to Okyere: the failure to return his money as required by a court order. To satisfy the FDCPA, the alleged act must at a minimum involve a misrepresentation that is 'material.'") (citations omitted).  That is, the alleged misstatement did not falsely represent "the character, amount, or legal status of any debt," "[c]ommunicat[e] or threaten[ ] to communicate to any person credit information which [was] known . . . to be false," or "use . . .  any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *See*, 15 U.S.C. § § 1692e(2)(A), (8) & (10).

        In addition to the fact that Dubin's alleged misstatement did not pertain to the subject debt, the statement,  which Plaintiff knew was false and which did not affect his defense of the City Court Action, was made to a third party, the City Court Judge, and not to Plaintiff. This fact further causes the Court to find that the alleged misstatement by Dubin is not actionable as a separate FDCPA claim. *See, O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 939, 941-944 (7th Cir. 2011) (Holding that the FDCPA "does not extend to communications that are allegedly meant to mislead the judge in a state court action."), *cert. denied*, — U.S. —, 132 S.Ct. 1141 (2012);[16] *but see, Sykes v. Mel Harris and Associates,*

_____

        [16]Notably, the misstatement in *O'Rourke* was a bogus billing statement,  attached to the complaint, that was intended to mislead the judge into granting a default judgment.  In the instant case, the alleged misstatement is far less material or significant, since it involved a statement that the parties intended to *discontinue* the lawsuit.  In other words, Dubin was indicating that he was *giving up* the attempt to collect from Plaintiff.

*LLC*, 285 F.R.D. 279, 290, n. 9 (S.D.N.Y. 2012) ("*O'Rourke* is not the settled law of this Circuit, and indeed, other circuit courts have conflicting views on the extent to which a debt collection lawyer's representations to the consumer's attorney or in court filings during the course of debt collection litigation can violate the FDCPA.") (citation and internal quotation marks omitted).  Consequently, Defendants are entitled to judgment on the FDCPA claims.

### *Motion to Re-Plead*

At oral argument, Plaintiff asked if he could file an amended complaint to address the problems identified by Defendants' motion for judgment on the pleadings.  The Court is sympathetic to Plaintiff in light of his *pro se* status.  The Court is also mindful that dismissals under FRCP 12(b)(6) [and 12(c)][17] are usually granted with leave to replead, unless the Court determines that such leave would be futile. *See, Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir.1991) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead.") (citation omitted); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").  A request to replead is futile where the problems with the complaint are substantive, and would not be cured by better pleading. *See, Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

In this action, any attempt to replead the same claims would be futile, for the reasons already discussed.  More specifically, the claims are either not actionable as private causes

---

[17]"This practice extends to motions for judgment on the pleadings brought pursuant to Rule 12(c)." *Woodward v. Morgenthau*, 740 F.Supp.2d 433, 441 (S.D.N.Y.,2010).

of action, or are time-barred.  Accordingly, Plaintiff's request to file an amended complaint is denied.

CONCLUSION

Defendants' motions [#23][#25] are granted and this action is dismissed with prejudice.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:     March 26, 2014
           Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge